IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOMOKO FUNAYAMA, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| vs. | : | NO. 12-5406 |
| | : | |
| NICHIA AMERICA CORP, | : | |
| Defendant | : | |

**M E M O R A N D U M**

STENGEL, J.                                                    March 14, 2014

This is the second employment discrimination action that Plaintiff Tomoko

Funayama brought against her former employer, Defendant Nichia America Corporation.

In her first action, Ms. Funayama asserted several claims under a variety of anti-

discrimination statutes.  I granted summary judgment on behalf of the defendants.

Funayama v. Nichia America, et al., No. 08-5599, 2011 U.S. Dist. LEXIS 40016 (E.D.

Pa. April 13, 2011), aff'd, 482 Fed. Appx. 723 (3d Cir. 2012), cert. denied, 133 S.Ct.

1820 (2013) (the "2008 Action").  In the present case, Ms. Funayama claims that the

defendant violated the "Lilly Ledbetter Fair Pay Act of 2009," Pub. L. No. 111-2, 42

U.S.C. § 2000e-5(e)(3), "as amended by [the] Equal Pay Act," by discriminating against

her in terms of compensation.[1]  See Compl. ¶ 18.  She also brings state law tort claims

against the defendant including fraud and deceit.  Id. ¶¶ 21, 24.  The defendant has filed a

---

[1] Despite Ms. Funayama's characterization of these statutes, the Equal Pay Act of 1963 amended
the Fair Labor Standards Act of 1938 by making it illegal to pay workers lower wages strictly on
the basis of their sex.  The Lilly Ledbetter Fair Pay Act of 2009 amended Title VII of the Civil
Rights Act of 1964 by stating that the 180-day statute of limitations for filing an equal pay
lawsuit regarding pay discrimination resets with each new paycheck affected by that
discriminatory action.  These statutes are construed in harmony.

motion to dismiss[2] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, I will grant the motion to dismiss as to Count One, decline to exercise supplemental jurisdiction over Counts Two and Three, and find that amending the complaint would be futile.

## I.  BACKGROUND

In this complaint, Ms. Funayama alleges that, "in addition to the sex discrimination in compensation, Plaintiff suffered from pay disparity stemming from her hidden employment status."  See Compl. ¶ 3.  She alleges that the defendant, throughout her employment, maliciously concealed her true employment status of "expatriate."  The defendant employs two classes of workers, and refers to one class as expatriates and the other as locally-hired employees.  For the defendant, expatriate employees are those who are dispatched from head offices and plants in Japan to overseas offices and plants typically for several years to a decade to manage, supervise, or advise local operations. Id. at ¶ 9.  "Expatriates receive extraordinary salary and benefit package including dual salary paid in Japan and the assigned country, housing and car allowance, paid vacation to visit Japanese family members, comprehensive health screening, etc., in addition to the benefits given to other locally-hired employees of the same facility."  Id.

The complaint also alleges that the defendant's headquarters in Japan hired Ms.

---

[2] In deciding a motion to dismiss, the district court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Accordingly, I may consider any evidence, testimony, or findings presented during Ms. Funayama's previous employment discrimination as a matter of public record without converting the motion to one for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure.

Funayama in July 1995 with the intention of dispatching her to Nichia America as an International Business Analyst. Id. at ¶ 10. Nichia Japan allegedly dispatched the plaintiff to its wholly-owned U.S. subsidiary, Defendant Nichia America Corporation, as an expatriate in July 1995, after hiring her in Japan.[3] Id.

The defendant secured a work visa E-2 for Ms. Funayama under USCIS E-2 Treaty Investors Countries articulating her job title, duties, and the annual salary of $35,000.00 plus $10, 000.00 in allowances and benefits. Id. at ¶11. The plaintiff was told that she was locally hired as a Business Coordinator/Account. Id. at ¶ 12. Her starting salary was $35,000.00, but there were no allowances or benefits paid to her that other expatriates received. All of the other expatriates hired in Japan and dispatched to Nichia America were Japanese males. Id. These males were afforded all of the extraordinary expatriate pay and benefits allegedly denied and hidden from Ms. Funayama whose only distinguishing characteristic from the other expatriates was her gender. Id. Those benefits included double salary, housing and car allowances, paid vacation to visit their Japanese family members, comprehensive health screening, etc., in addition to the benefits given to all other locally-hired employees of the same facility. Id. at ¶ 13.

---

[3] I find it curious that Ms. Funayama testified at her deposition in the 2008 Action that her only employment in Japan after college was with Honda, and that her first job following the receipt of a postgraduate degree from Tusculum College in Tennessee was with Nichia America after she arrived in Lancaster, Pennsylvania. She never testified in that case that she had been employed in Japan by Nichia Japan. The only time spent by Ms. Funayama at Nichia Japan was for a one-month training program following her date of hire by Nichia America in 1995. I make no speculation about the reason for this discrepancy except that one would hope that an employee would remember with exactness those types of basic details about the commencement of her employment.

Ms. Funayama was employed by the defendant from July 1995 until her resignation in July 2008, and during that period, she was the only alleged female expatriate.  Id.  She was allegedly under the "fraudulent belief perpetrated upon her" by the defendant that she was a locally-hired employee and not entitled to the same benefits as the Japanese males.  Nichia America President Shigeo Kuboniwa handed out year-end bonus checks to all the managers and all employees in white envelopes.  Id.  Each white envelope given to the Japanese males contained blank paper because Mr. Kuboniwa did not want the American employees to know that the Japanese males were paid bonuses and an additional salary in Japan.  This concealment was allegedly to hide the truth from the American employees that there were two separate employment statuses.  Id.

The complaint indicates that, during discovery in the 2008 Action, the plaintiff deposed Mr. Kuboniwa who testified on October 12, 2010 that Ms. Funayama was locally-hired and not an expatriate.  Id. at ¶ 14.  The complaint does not reveal, however, that Mr. Kuboniwa was actually deposed twice in that case.  Hopefully, the omission was inadvertent.  At his first deposition on September 21, 2010, Mr. Kuboniwa was asked, "Was Plaintiff an expatriate?"  See Document #10-1 at 24.  He answered, "I think so." Id.  At the October 12, 2010 deposition, Mr. Kuboniwa clarified that earlier testimony and indicated that he was mistaken when he said that Ms. Funayama was an expatriate and that she was, in fact, a locally-hired employee.  See Document #10-1 at 25.

The complaint alleges that this concealment of Ms. Funayama's "true expatriate status was not discovered until a few weeks later in early November 2010."  See Compl.

¶ 14.  Ms. Funayama "received internal Nichia Japan employment/personnel documents[4] that had been concealed from her since there [sic] production in 1995."  Id.  The plaintiff alleges that this concealment constitutes fraud and deceit.  The plaintiff insists now that she was denied, on an ongoing and continuous basis, her rightful compensation and expatriate benefits that were afforded the Japanese male expatriates.  Id.

## II.  STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Following the Supreme Court decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), pleadings standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss under Fed. R. Civ. P.12(b)(6).  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009); see also Phillips v. County of Allegheny, 515 F. 3d 224, 230 (3d Cir. 2008).

Therefore, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The court must accept all of the complaint's well-pleaded facts as true but may disregard legal conclusions.  Iqbal, 556 U.S. at 679.  Second, a

---

[4]  These documents are in Japanese and allegedly show that the plaintiff was hired in Japan by Nichia Japan, then dispatched to the defendant in July 1995.  See Exhibit K to Pl.'s Resp. to Def.'s motion to dismiss.  Without an official English translation, these documents are useless to the court.

district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Id.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  Id.; see also Phillips, 515 F.3d at 234-235.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in Twombly, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557.

Finally, courts must liberally construe *pro se* complaints and "apply the applicable law, irrespective of whether [the] litigant has mentioned it by name."  Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002).  Thus, a plaintiff's complaint, however inartfully pleaded, must be held to a less stringent standard than a formal pleading drafted by an attorney.  Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## III.  DISCUSSION

### A.  Count One

In Count One, Ms. Funayama alleges that the defendant's

> "actions, especially concealing Plaintiff's true employment status throughout her employment, set her apart from other male employees **by discriminating against her in terms of compensation**, then when litigated, changing testimony under oath in their malicious effort to continuously conceal her employment status, were willful and wanton and exhibit malice and/or reckless indifference under Lilly Ledbetter Fair Pay Act of 2009."

See Am.Compl. ¶ 18 (emphasis added).  Congress passed the Ledbetter Act in response to the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618 (2007), which held that "pay-setting" was a discrete act and therefore the period for filing an EEOC claim commences when the unlawful act occurs.  Noel v. Boeing Co., 622 F.3d 266, 270-275 (3d Cir. 2010).  The Ledbetter Act amended Title VII by adding the following section:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, **including each time wages, benefits, or other compensation is paid**, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added).  The purpose of the Ledbetter Act "was to reinstate the law regarding the timeliness of pay compensation claims as it was prior to

the Ledbetter decision, which Congress believed undermined statutory protections against compensation discrimination by unduly restricting the time period in which victims could challenge and recover for discriminatory compensation decisions." Noel, 622 F.3d at 271 (quoting Mikula v. Allegheny County, 583 F.3d 181, 184 (3d Cir. 2009)).  Thus, pursuant to the Act, each paycheck that stems from a discriminatory compensation decision or pay structure is a tainted, independent employment action that commences the administrative statute of limitations.  Id.

       1.  *Res Judicata*

The defendant argues that the complaint should be dismissed based on the doctrine of *res judicata*.  I agree.  In order to prevail on a defense of *res judicata*, a defendant must demonstrate that there has been: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action.  Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991).

It is undisputed that there was a prior suit which involved Ms. Funayama, as plaintiff, and Nichia America Corporation, as defendant.  Ms. Funayama, however, disputes that the 2008 Action was based on the same cause of action and that there was a final judgment on the merits.  She insists that the two cases were brought under separate causes of action, i.e., the 2008 Action contained, *inter alia*, Title VII clams for gender discrimination, and the present case contains a claim of unequal compensation based on gender under the Ledbetter Act and the Equal Pay Act.  I disagree.

To make a determination whether a subsequent suit is based on the same cause of action as a prior suit, the required analysis does not depend on the specific legal theory

invoked, but rather "the essential similarity of the underlying events giving rise to the various legal claims." Davis v. U.S. Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982). "[T]he focal points of our analysis are whether the acts complained of were the same, whether the material facts alleged in each suit were the same and whether the witnesses and documentation required to prove such allegations were the same." United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984). Moreover, "*res judicata* bars not only claims that were brought in the previous action, but also claims that could have been brought." See Post v. Hartford Ins. Co., 501 F.3d 154, 169 (3d Cir. 2007).

The statutes under which both cases have been brought are quite similar in that they represent Congress's response to the problem of discrimination in employment, including discrimination in compensation. Title VII provides that "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his **compensation**, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin." 42 U.S.C. § 2000e-2(a)(1)(emphasis added).

Under the Lilly Ledbetter Fair Pay Act of 2009, an unlawful employment practice with respect to discrimination *in compensation* occurs when (1) a discriminatory decision is adopted, (2) a plaintiff becomes subject to the discriminatory decision, or (3) the plaintiff is affected by application of the discriminatory decision, including "each time wages, benefits, or other compensation is paid." 42 U.S.C. § 2000e-5(e)(3)(A) (emphasis added).

The Equal Pay Act provides that "[n]o employer having employees subject to any provisions of this section shall discriminate within any establishment in which such employees are employed, between employees on the ***basis of sex by paying wages*** to employees in such establishment at a rate less than the rate at which he pays wages to employees ***of the opposite sex*** in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex:  Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."  29 U.S.C. § 206(d)(1)(emphasis added).

To further its goal of preventing employment discrimination, Congress created a remedial scheme by which an aggrieved party must file a complaint with the state anti-discrimination agency, followed by a requirement that the individual also file a claim with the EEOC within 300 days of the allegedly discriminatory action.  42 U.S.C. §§ 2000e-5(b) through 5(e); West v. Philadelphia Elec. Co., 45 F.3d 744, 754 n.8 (3d Cir 1995) ("The 300-day period applies where the plaintiff has initially instituted proceedings with a State or local agency.  Otherwise, the applicable period is 180 days").  Only after those steps have been completed may an individual file suit in federal court.  West, 45 F.3d at 754.

Here, Ms. Funayama complied with this remedial scheme by dually-filing a Second Amended Complaint with the Pennsylvania Human Relations Commission and the EEOC on August 28, 2008.  See Document #7 of 2008 Action at 27.  In Count One of that administrative charge, Ms. Funayama claimed discrimination in compensation based on her gender.  She claimed that Tim Ujike,[5] a Japanese male co-worker, was paid "substantively more" in compensation than she, even though their jobs were substantially equal with respect to skill, effort, and responsibility.  Id. at 28.  After termination of the state agency proceedings, Ms. Funayama filed her first employment discrimination action in this court, and again claimed, *inter alia*, that "Mr. Ujike received "substantively more" in compensation than plaintiff did."  See Document #5 of 2008 Action at 3.  Although each count of the amended complaint incorporated this allegation by reference, Ms. Funayama failed to bring a specific count claiming discrimination in compensation in the 2008 Action.

On November 12, 2010, upon the discovery of the Japanese employment documents, Ms. Funayama sought leave to amend her complaint in the 2008 Action to include, *inter alia*, a claim under the Equal Pay Act.  See Document #78 of 2008 Action. In her proposed amendment, Ms. Funayama identified Mr. Ujike as the male who was allegedly paid more for equal work.  See Document #91 of 2008 Action.  However, Mr. Ujike had been identified on multiple occasions, as Ms. Funayama's direct supervisor and was not viewed, by Defendant Nichia or by Ms. Funayama, as her equal during the time she was a Nichia employee.  Evidence in that case revealed that in 2008, Ms. Funayama's

---

[5] Mr. Ujike's job title was General Manager of Finance and Accounting.

base compensation was $62,530, and Mr. Ujike's was $72,150.  Although Ms. Funayama

alleged that she and Mr. Ujike shared duties within the accounting department, she

provided no evidence to support the conclusion that they performed the same functions

with the same level of responsibility.  Accordingly, I denied her request for leave to

amend, finding that amendment on that ground would have been both prejudicial to the

defendants and futile.  <u>Funayama v. Nichia America, et al.</u>, No. 08-5599, 2011 U.S. Dist.

LEXIS 40016 at *73.

Ms. Funayama's present case in this court is based on the same cause of action as

the 2008 Action, i.e., employment discrimination based on gender including

discrimination in compensation.  She alleges that her employer willfully and wantonly

"set her apart from other male employees by discriminating against her in terms of

compensation."  <u>See</u> Compl. ¶18.  This allegation is indisputably connected to the 2008

Action in that it arises out of the identical employment relationship and involves the same

type of discrimination of which Ms. Funayama complained in 2008.  In fact, I denied on

the merits her motion for leave to amend the First Amended Complaint which sought to

include an identical Equal Pay Act claim.  <u>Funayama v. Nichia America, et al.</u>, No. 08-

5599, 2011 U.S. Dist. LEXIS 40016 at *73.

In conclusion, notwithstanding the specific legal theories invoked, and given the

essential similarity of the defendant's underlying conduct alleged in both actions, I find

that the present complaint is based on the same cause of action as the 2008 Action.  I

further find that, because the defendant has demonstrated that there was a final judgment

on the merits in the 2008 Action which involved Ms. Funayama and Nichia America, and

12

that this present case is based on the same cause of action, the doctrine of *res judicata*

bars Ms. Funayama's claim of discrimination in compensation.  Accordingly, I will grant

the defendant's motion to dismiss Count One of this complaint.  Any attempt to amend

this Count would be futile because a claim extinguished by *res judicata* "includes all

rights of the plaintiff to remedies against the defendant with respect to all or any part of

the transaction or series of connected transactions, out of which the action arose."

Restatement (Second) of Judgments § 24(1).

### 2.  Statute of Limitations

In the alternative, even if the doctrine of *res judicata* did not preclude Ms.

Funayama from bringing a claim of discrimination in compensation, her claim would still

be barred by the statute of limitations.  Claims under the Equal Pay Act must be initiated

within two years, three if the violation is willful.  See 29 U.S.C. § 255.  The statute of

limitations begins to run on the date the plaintiff received her last allegedly

discriminatory paycheck.  See 29 U.S.C. § 626(d)(3).  In this case, Ms. Funayama

received her final paycheck in August 2008, setting August 2010 as the deadline for

filing a complaint in federal court.[6]  Incredibly, Ms. Funayama argues that she did not

learn of this discrimination in compensation until November 2010, so the statute of

limitations should not begin to run until then.  The entire record of the 2008 Action,

however, belies her contention.

As a general rule, the statute of limitations begins to run when the plaintiff's cause

of action accrues.  The accrual date is the date on which the plaintiff discovers that she

---

[6]  The deadline would be extended to August 2011, if the violation were willful.

has been injured.  In employment discrimination cases, employees may not become aware of the alleged unlawful employment practice until sometime after it occurs.  There, the limitations period begins to run when the plaintiff knows or reasonably should know, through the exercise of reasonable diligence, that the discriminatory act has occurred. Oshiver v. Fishbin, Sedran, & Berman, 38 F.3d 1380, 1384 (3d Cir. 1993); see also Miller v. Beneficial Mgmt. Corp., 977 F.2d 834 (3d Cir. 1992) (the discovery rule provides that the statute of limitations for filing the initial complaint in a pay claim does not begin to run until the plaintiff knew or should have known about the alleged discriminatory act).  "The discovery rule keys on a plaintiff's cognizance, or imputed cognizance, of actual injury," not the date she knew the injury was legally cognizable. Oshiver, 38 F.3d at 1390; Podobnik v. United States Postal Serv., 409 F.3d 584, 590 (3d Cir. 2005) ("[T]he discovery rule is concerned with knowledge of actual injury, not legal injury.")

Here, the important question for accrual purposes, then, is when did the plaintiff know, or when should she have known through the exercise of reasonable diligence, that she was underpaid based solely on the fact that she is a woman?  The most certain response is that it was most definitely not November 2010.

Ms. Funayama was fully aware of the defendant's compensation model at the time of the commencement of the 2008 Action.  In that case, she alleged that, although her job was substantially equal with respect to skill, effort, and responsibility to that of her male supervisor as of September 2003, her supervisor received substantially more in compensation than she did.  See Compl. ¶11, and Am.Compl. ¶13 of 2008 Action.  Ms.

Funayama's knowledge of the defendant's compensation model was verified repeatedly during the course of her September 15, 2009 deposition in the 2008 Action.  She testified that, at the time of her hiring in 1995, she was assigned to the position of Business Coordinator/Accountant in the defendant's Mountville Accounting Department where she "managed payroll and company benefits."  <u>See</u> Document #9-1 at 56.  She further testified that when she was promoted to Assistant Financial Manager in 1998, she was responsible for day-to-day accounting, payroll management, and employee benefits.  <u>Id.</u> at 57.  Ms. Funayama was again promoted to the position of Financial Manager in 2004, and testified that she managed "day-to-day accounting and month in closing, semi-annual outside auditing firm reviews and audits, reports, analysis" and "was still managing payroll then and employee benefits."  <u>See</u> Document #9-1 at 59.  Ms. Funayama testified that she had a general idea of the raises that other employees received when she was managing the defendant's payroll because she knew "all the raw data of the payroll."  <u>Id.</u> at 90.  The only employee in the Accounting Department who earned more money than she when she was the Financial Manager was Mr. Ujike, her direct supervisor.  <u>Id.</u>

I also note that Ms. Funayama testified at that same deposition that, at least as early as the winter of 2004, she had conversations with Ms. Calder, a co-worker, about the defendant's treatment of women in the workplace.  When asked what were the common complaints, Ms. Funayama stated:

> "That I told her no matter how hard I work, I don't get the deserving salary and promotion because I'm a Japanese woman in Japanese company."

Id. at 87-88.  Given Ms. Funayama's testimony of her knowledge of the defendant's compensation and benefits model during the course of her tenure with the company, there is no question that she was aware or, through reasonable diligence, should have been aware as early as 2004, that she did not receive certain compensation and benefits received by the employees who had been sent by the defendant's Japanese parent corporation to work in the United States at Nichia America.  Thus, the discovery rule brings no relief to Ms. Funayama's claim which was filed on October 2, 2012, long outside of the statute of limitations applicable to Equal Pay Act claims.  Accordingly, even if the doctrine of *res judicata* did not bar Ms. Funayama's Equal Pay Act claim, it would still be untimely.

### 3. *Prima Facie* Case

Again in the alternative, even if the statute of limitations did not bar Ms. Funayama's claim, she has failed to demonstrate that she is able to establish a *prima facie* case of discrimination in compensation.  The court applies a two-step burden-shifting test to its analysis of Equal Pay Act claims.  First, a plaintiff must establish a *prima facie* case by showing that employees of the opposite sex are paid differently for performing equal work.  See Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000).  The burden of persuasion then shifts to the defendant employer to demonstrate one of four enumerated affirmative defenses:  "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1); see also Stanziale, 200 F.3d at 107, n.6.  The defendant must prove its affirmative defense "so clearly that no rational jury

could find to the contrary."  EEOC v. Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1414 (3d Cir. 1989); see Stanziale, 200 F.3d at 107.

Ms. Funayama has not established a *prima facie* case for an Equal Pay Act claim. Although she alleges that the defendant paid different wages to employees of the opposite sex for equal work requiring equal skill, effort, and responsibility performed under similar working conditions, Ms. Funayama has provided the name of no other male employee who meets that criteria.  Mr. Ujike, the comparator to whom Ms. Funayama refers, was Ms. Funayama's superior and was paid accordingly.  In fact, Ms. Funayama testified that at her work location in Lancaster, Mr. Kuboniwa and Mr. Ujike were the only employees, other than the sales persons, who were compensated at a higher rate than she in 2008.  See Document #9-1 at 91.  She further testified that Mr. Ujike's job duties were the same as hers, with the exception that he did not have direct involvement in payroll and employee benefits.  He did, however, have more emphasis on credit management of the customers and inventory, and cost accounting.  Id. at 59.  Thus, Ms. Funayama and Mr. Ujike were not performing equal work.  His duties required far more skill and responsibility.  Ms. Funayama has not shown, and could not show that the defendant's male employees were paid a higher salary for performing equal work. Accordingly, because Ms. Funayama has not established a *prima facie* case, this count would still be dismissed if her complaint were not untimely and/or barred by the doctrine of *res judicata*.

17

**B.  State Law Claims – "Common Law Theory of Fraud," and
   "Common Law Tort, Fraud, and Deceit"**

In Count Two of her complaint, Ms. Funayama alleges a "common law theory of fraud" against the defendant for "concealing [her] true employment status throughout her employment."  Employing identical language in Count Three, Ms. Funayama alleges a claim of "common law tort, fraud, and deceit."  A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see also Figueroa v. Buccaneer Hotel, 188 F.3d 172, 181 (3d Cir. 1999).  Here, I have dismissed Ms. Funayama's federal claim, leaving only the state claims.  Accordingly, the prerequisites for § 1367(c)(3) having been met, I will decline to exercise supplemental jurisdiction over Counts Two and Three.

An appropriate Order follows.